IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

| | | |
|---|---|---|
| LEROME BRANTLEY | * | |
|     Plaintiff, | * | |
| v. | * | CIVIL ACTION NO. 2:02-CV-1425-A |
| OFFICER PERRYMAN, *et al.*, | * | |
|     Defendants. | * | |

_____

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff, Lerome Brantley ("Brantley"), filed this 42 U.S.C. § 1983 action on December 30, 2002 while incarcerated at the Montgomery County Detention Facility located in Montgomery, Alabama.[1]  He brings this action against correctional officers Susan Perryman and Jackie Kendrick alleging that Defendant Perryman punished him in violation of the Constitution by spraying his genitals repeatedly with pepper spray.  Brantley requests that Defendant Perryman be punished for her conduct and that Defendant Kendrick be punished for aiding Defendant Perryman.  Plaintiff seeks $5 million in damages for pain and suffering, $150,000 for emotional distress and mental anguish, $100,000.00 in normal [sic] damages, $100,000.00 in compensatory damages, and trial by jury.

Defendants responded to Plaintiff's complaint by filing a special report and supporting evidentiary materials addressing Plaintiff's claims for relief. (Doc. No. 15.)   The court

___

[1] Plaintiff is currently incarcerated at the Fountain Correctional Facility which is located in Atmore, Alabama.

deems it appropriate to treat the special report as a motion for summary judgment. Plaintiff opposes the motion. (Doc. Nos. 19, 20.) Upon consideration of Defendants' dispositive motion, the evidentiary materials filed in support thereof, and Plaintiff's opposition, the court finds that Defendants' motion for summary judgment is due to be granted in part and denied in part.

## I. STANDARD OF REVIEW

To survive Defendants' properly supported motion for summary judgment, Plaintiff is required to produce some evidence supporting his constitutional claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). He must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Consequently, when a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex Corp.*, 477 U.S. at 322; *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607 (11th Cir. 1987). Where all the materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987). Although factual inferences must be viewed in a light most favorable to the non-moving party, and *pro se* complaints are entitled

to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

A defense of qualified immunity is not available in cases alleging excessive force in violation of the Constitution because the use of force "maliciously and sadistically to cause harm" is clearly established to be a constitutional violation.[2] *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002), *citing Hudson v. McMillian*, 503 U.S. 1 (1992), and *Whitley v. Albers*, 475 U.S. 312 (1986). Consequently, when a plaintiff alleges the use of excessive force, the only question is whether he or she has alleged facts sufficient to survive a motion for summary judgment, unless the force used was *de minimis*. *Skrtich*, 280 F.3d at 1302; *see also Hudson,* 503 U.S. at 9-10; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). The court will, therefore, consider whether Plaintiff's allegation that Defendants used excessive force against him, which the court must take as true for purposes of summary judgment, sets forth a violation of his constitutional rights.

---

[2]It appears from the documents before the court that at the time the actions about which Plaintiff complains occurred, he was not a convicted felon but, rather, a pre-trial detainee. (Doc. No. 15, Savage Affidavit.) The standard of review, therefore, is under the Fourteenth Amendment rather than the Eighth Amendment as pretrial detainees are protected from excessive force that amounts to punishment under the Due Process Clause of the Fourteenth Amendment. *See Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989); *Lancaster v. Monroe County*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997) (A government official's treatment of a pre-trial detainee is governed by the Due Process Clause of the Fourteenth Amendment . . . while the Cruel and Unusual Punishment Clause of the Eighth Amendment governs an official's treatment of a convicted prisoner.") (citations omitted). With respect to the applicable standard of review, however, this is a distinction without difference. For analytical purposes, there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment. *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994); *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985); *Riley v. Dorton*, 115 F.3d 1159, 1166-67 (4th Cir.1997) (*en banc*).

## II. DISCUSSION

### Excessive Force Claim

The Eighth Amendment to the United States Constitution expressly prohibits the infliction of "cruel and unusual punishments." "It not only out-laws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin,* 77 F.3d 756, 761 (4th Cir.1996); *see Wilson v. Seiter,* 501 U.S. 294, 298 (1991); *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). For an inmate to succeed on a claim of excessive force in violation of the Eighth Amendment, he must demonstrate both an objective and subjective component. The subjective element is analyzed as "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992)  The objective element is met if the officer's actions were harmful enough to offend contemporary standards of decency. *Id*. at 8; *Wilson,* 501 U.S. at 298 (did the prison official acted with a "sufficiently culpable state of mind.").

In *Hudson*, the Court held that the use of excessive physical force against a prisoner may constitute cruel and unusual punishment even though the prisoner does not suffer serious injuries. 503 U.S. at 9. *Hudson* further confirms that resolution of excessive force cases are controlled by the analysis set forth in *Whitley v. Albers*, 475 U.S. 312 (1986). *Id*. at 7. Factors to be considered in deciding whether a particular use of force was reasonable are whether there was an objective need for the application of force, the relationship between any such need and the amount of force applied, the extent of injury inflicted, the extent of the

threat to the safety of staff and inmates as reasonably perceived by prison officials, and any efforts made to temper the severity of the response. *Id*. at 321.  Under *Whitley*, the core inquiry is whether the force was applied in a good faith effort to maintain or restore discipline or applied maliciously and sadistically for the purpose of causing harm. *Id*. The Supreme Court has clearly recognized the danger of overstepping the boundaries of judicial review in this area:

> 'Prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.' That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline. It does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice

*Id*. at 321-22 (quoting *Bell v. Wolfish,* 441 U.S. 520, 547 (1979)).

In his complaint, Brantley maintains that on September 28, 2002 Officer Perryman opened the feed trap door to his cell and sprayed his mid-section.  She then entered his cell and sprayed his "private area" repeatedly with pepper spray as he tried to get away from her. Officer Perryman then stepped out of Plaintiff's cell and Officer Kendrick locked the cell door behind her.  Brantley states that he was refused medical attention and was offered only a shower. (Doc. No. 1.)

Defendants' evidentiary material reflects that at approximately 2:30 p.m. on

September 28, 2002, Officers Perryman and Kendrick were performing roving duties on the medical cell block which included roll call and issuing razors. The feed trap doors were closed, so Officer Perryman asked Officer Kendrick to open each cell block door. Upon approaching Brantley's cell door, Officer Perryman ordered Brantley to step away from the door. He complied with this order. When Officer Perryman entered the cell, however, Brantley began masturbating, cursing, and threatening Officer Perryman, and told her to "do what you have to do." As she turned to exit the cell, Brantley began walking towards her with his penis in his hand. Officer Perryman directed Plaintiff to back up to the wall. Brantley, however, continued walking toward Officer Perryman. Due to Plaintiff's continued advance, Officer Perryman maced Brantley. He covered his eyes with his hands to prevent the mace from getting in his eyes. Brantley continued masturbating and walking towards Officer Perryman. As a result, Officer Perryman used mace a second time. Plaintiff again covered his eyes while continuing to masturbate. (Doc. No. 15, Incident Report, Perryman and Kendrick Affidavits, Investigating Supervisor's Report, Perryman, Kendrick, and Christburg Use of Force Reports.)

    The nurse on duty, Nurse McElroy, advised prison officials of the situation involving Officer Perryman and Plaintiff. At approximately 2:40 p.m. several officers reported to the medical unit. Other than being maced, Brantley received no noted injuries. He was escorted to the first floor where he was offered a shower. He refused the shower, complaining that it would cause the sensation of burning to increase. Brantley received a change of clothing

and was escorted to a cell on the fourth floor. At approximately 5:00 p.m., Brantley took a shower. He subsequently received disciplinary infractions for using abusive language, being unsanitary, failing to comply with an officer's lawful order, and acting in a way that disrupts or interferes with the security or orderly running of the facility. (Doc. No. 15, Incident Report, Investigating Supervisor's Report, Institutional Clinical Records.)

Plaintiff maintains that Officer Perryman's use of mace was unnecessary and unreasonable. Brantley relates that Officer Perryman initially sprayed a burst of mace through the feed trap door because he was masturbating. He then put his penis in his pants, at which time Brantley contends that Officer Perryman directed him to "take it out again." Plaintiff states that he complied with this request and again began to masturbate. Officer Perryman than directed Officer Kendrick to open Plaintiff's door. At this time, Brantley states that he had "backed all the way up and [was] fac[ing] the wall with his penis in his hand." He maintains that Officer Perryman then came up behind him, reached around him, and proceeded to mace his groin area. Brantley asserts that after spraying his penis several times, Officer Perryman exited the cell while constantly deploying her mace. She then closed both Plaintiff's cell door and trap door and stated to Brantley that she was going to let him "suffocate in this shit." Plaintiff states that he wrapped his face in a towel as a result of the fumes from the spray, which made it difficult to breathe. He attempted to run water over his penis but claims that the water increased the sensation of burning. Within five minutes of the incident, additional rovers came to Brantley's cell, told him to gather his

belongings, and took him downstairs for a shower and a change of clothes. (Doc. No. 20.)

In light of the foregoing, there is a factual dispute concerning whether Officer Perryman's application of force was justified and whether the use of force was excessive under the circumstances. As noted, Plaintiff argues that Defendant Perryman's use of mace was unnecessary and unwarranted because at the time she entered his cell, he was facing the cell wall with his back to her and was not posing a threat. Viewed in this way, a jury could conclude that the evidence does not show an objective need for the force which was used because Plaintiff was not, at the time the mace was used, jeopardizing any person's safety or threatening prison security. While the law recognizes that order and discipline are important in running a correctional institution, it does not authorize the arbitrary use of force, *see Whitley*, 475 U.S. at 320-21; *Smith v. Dooley*, 591 F. Supp. 1157, 1168 (W.D. La. 1984) *aff'd*, 778 F.2d 788 (5th Cir. 1985), nor does it justify punitive use of force on difficult inmates not posing a real threat to themselves, other inmates, or prison staff or raising security concerns. *See Ort v. White*, 813 F.2d 318, 324 (11th Cir. 1987).

For purposes of the pending dispositive motions, the court cannot resolve conflicting factual assertions. Plaintiff's evidence, if believed, could establish that Defendant Perryman used mace on an inmate who posed no threat. Not every instance of inmate disobedience justifies a use of force. The test is whether the officer's use of force was reasonable under the circumstance, or whether it was punitive, arbitrary, or malicious. *See Hudson*, 503 U.S.

at 7.  Accordingly, the undersigned concludes that there are genuine disputes of material fact that preclude granting Defendant Perryman's dispositive motion, *see Celotex Corp.*, 477 U.S. at 322-323, and that she is not entitled to qualified immunity with respect to the excessive force claim.  *See Skrtich v. Taylor*, 280 F.3d at 1301.

To the extent Plaintiff Perryman is sued in her official capacity, she is immune from damages.  Official-capacity lawsuits are "in all respects other than name . . . treated as a suit against the entity."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  The Eleventh Amendment to the United States Constitution bars damage actions against States in federal court absent a waiver by the State or valid congressional action allowing suit, *id.* at 169, and this bar extends to suits against state officers and employees sued for damages in their official capacities.  *Id.*; *Jackson v. Georgia Dept. Of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).  Alabama sheriffs and their deputies act on behalf of the State, and not the county, and therefore, are entitled to state sovereign immunity protection when they are sued in their official capacity.  *McMillian v. Monroe County*, 520 U.S. 781, 789 (1997) (holding that state law properly controlled whether Alabama sheriffs were officers of the county or the State, and concluding that, under state law, sheriffs should be considered officers of the State.)

As to Plaintiff's claims against Officer Kendrick, it appears from the submissions before the court that this defendant played no roll with regard to Brantley's excessive force claim.  Rather, Officer Kendrick was a trainee on the date in question and was assisting

9

Officer Perryman with rover duties when the incident with Plaintiff occurred. The court cannot conclude that Officer Kendrick's presence outside of Plaintiff's cell during the incident in question, without more, rises to the level of a constitutional violation. (Doc. Nos. 1, 20, 15 - Kendrick Affidavit.) Accordingly, the court finds that Officer Kendrick is entitled to summary judgment on Plaintiff's Eighth Amendment claim. *See Celotex Corp*. 477 U.S. at 322.

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendant Perryman's Motion for Summary Judgment be GRANTED to the extent she has been sued in her official capacity and DENIED to the extent she is sued in her individual capacity;

2. Defendant Kendrick's Motion for Summary Judgment be GRANTED; and

3. Plaintiff's excessive force claim against Defendant Perryman be set for trial by jury.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **April 19, 2005.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not

appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 6th day of April, 2005.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE